UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES BRIAN STOVER,

    Petitioner,

v.                                                  CASE NO: 8:06-CV-1136-T-30MAP

SECRETARY, DEPARTMENT OF
CORRECTIONS, and ATTORNEY
GENERAL, STATE OF FLORIDA,

    Respondents.
_____/

## ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. #1). The Court has considered the petition, Respondents' response (Dkt. #6) and Petitioner's reply (Dkt. #8). Upon review, the Court determines that the petition must be denied because it fails to meet the requirements of 28 U.S.C. §2254(d) and (e).

## BACKGROUND

Petitioner was convicted on June 4, 2001, by a jury trial of one count of robbery with a deadly weapon. The facts elicited at trial concerning the incident are adequately summarized by Respondents as follows:

> . . . Jamie Mijos, the victim, testified that on October 27, 1999, she was working at the Haines Corner Deli along with Rachel Wilson when she noticed a man standing over in a corner hanging out. (Resp. Ex. 002, Tr. 12-13).

After the store cleared of customers, the man approached Mijos at the counter and asked for change. (Resp. Ex. 002, Tr. 14). As Mijos started to open up the cash register, she heard a clicking sound. Id. Mijos then looked up and observed the man lunge at her with a knife. (Resp. Ex. 002, Tr. 14, 19). Mijos saw the blade of the knife and attempted to smack it away. (Resp. Ex. 002, Tr. 19-20). The man then reached over the register and attempted to pull money out while he continued to threaten Mijos with his knife extended out within 6 to 9 inches from Mijos' face. (Resp. Ex. 002, Tr. 20). Mijos was scared. Id. Eventually, the man pulled money out of the register, turned around, and ran out the door. (Resp. Ex. 002, Tr. 22). As Mijos followed the man out the door, she observed him run to the passenger door of a white car with license tag number A11WIS. (Resp. Ex. 002, Tr. 25). Mijos provided police the tag number.

Next Rachel Wilson testified. (Resp. Ex. 002, Tr. 38). Wilson stated at the time of the offense she was present in the victim's store getting ready to start her shift. (Resp. Ex. 002, Tr. 39-40). Wilson was on the phone when she heard someone ask Mijos for change. (Resp. Ex. 002, Tr. 40-41). Next, Wilson observed a man hold his arms out with a knife, reach for money in the cash register, then run out the door. (Resp. Ex. 002, Tr. 42). Following Wilson, Susan Strolygo testified that in October of 1999, she owned a white Volkswagon Fox with license tag number A11WIS. (Resp. Ex. 002, Tr. 54). At the time, Strolygo's daughter, Emily Kinsley, was using Strolygo's vehicle. (Resp. Ex. 002, Tr. 55).

Emily Kinsley then testified she knew the instant petitioner. In October, 1999, Emily let petitioner borrow her mother's car while Emily stayed with petitioner at Shady Oaks Apartments in Kenneth City. (Resp. Ex. 002, Tr. 58-59). Emily confirmed, the day of the instant offence, petitioner had her mother's Volkswagon Fox. (Resp. Ex. 002, Tr. 61). Next, Enrique Gomez testified that in October, 1999, he was hanging out with petitioner when petitioner stopped at the victim's deli because petitioner stated he wanted to get cigarettes. (Resp. Ex. 002, Tr. 92-96). A couple of seconds later, petitioner ran back to the car while people were chasing him. (Resp. Ex. 002, Tr. 97). Gomez stated petitioner claimed he got $50 after he held a knife up to a lady at the deli. (Resp. Ex. 002, Tr. 100).

Sergeant Kevin Bennett of the Pinellas County Sheriff's Office testified he was the robbery investigator for the instant case. (Resp. Ex. 002, Tr. 125). Bennett interviewed victim-Mijos and Rachel Wilson as part of his investigation to the instant robbery. Bennett received the vehicle tag number

>and the assailant's description from the victim, Mijos. (Resp. Ex. 002, Tr. 127). Bennett ultimately interviewed Emily Kinsley who provided Bennett the name of petitioner. Bennett received a positive photograph ID of petitioner from the victim. (Resp. Ex. 002, Tr. 132). Subsequent to providing petitioner <u>Miranda</u> rights, petitioner confessed to Bennett he was involved in the instant Robbery. (Resp. Ex. 002, Tr. 143). Specifically, petitioner confessed he entered the convenience store with the intention of robbing the clerk. <u>Id.</u> While the clerk was standing behind the cash register, petitioner approached her with a knife. <u>Id.</u> Petitioner claimed he held the knife in his hand, but the blade was closed. <u>Id.</u> Petitioner asserted he grabbed the money and ran from the store. (Resp. Ex. 002, Tr. 144). Petitioner identified the knife he used in the robbery. (Resp. Ex. 002, Tr. 145). Subsequently, petitioner signed a hand written confession to the robbery. (Resp. Ex. 002, Tr. 149).

(Response, pp. 3-6).

Petitioner was sentenced to a term of life as an habitual felony offender and prison releasee offender. After filing a direct appeal, a post-conviction motion, and an appeal from the trial court's denial of his post-conviction motion, all of which were unsuccessful, Petitioner now brings the instant petition for writ of habeas corpus before this Court. This timely petition raises the following grounds, all of which were properly exhausted:

**Ground One:** Whether Petitioner was denied his Sixth and Fourteenth Amendment right to effective assistance of trial counsel by virtue of trial counsel's failure to request a jury instruction for robbery by sudden snatching, as a lesser-included offense for robbery with a deadly weapon.

**Ground Two:** Whether Petitioner was denied his Sixth and Fourteenth Amendment right to effective assistance of trial counsel by virtue of trial counsel's failure to object to the state trial court's deviation from the standard jury instruction to robbery with a deadly weapon.

**Ground Three:** Whether Petitioner was denied his Sixth and Fourteenth Amendment right to effective assistance of trial counsel by virtue of trial counsel's failure to call witnesses at suppression hearing.

**Ground Four:** Whether Petitioner was denied his Sixth and Fourteenth Amendment right to effective assistance of trial counsel by virtue of trial counsel's failure to apprise Petitioner of the potential maximum sentence by going to trial.

## SECTION 2254 THRESHOLD

Since Petitioner's conviction was entered after the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his petition is subject to the provisions thereof. When a federal court is asked to review a criminal conviction from state court, 28 U.S.C. §2254 places a heavy burden upon the petitioner. Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim resulted in a decision that:

(1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or

(2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

In Williams v. Taylor, 529 U.S. 362, the Supreme Court held:

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Additionally, federal habeas relief is available under the "unreasonable application" standard only if the state court's application of clearly established federal law was "objectively unreasonable." Parker v. Head, 244 F.3d 831, 835 (11th Cir. 2001).

In a proceeding under the second standard (an unreasonable determination of the facts), a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1). This statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. McBride v. Sharpe, 25 F.3d 962, 971 (11th Cir. 1994).

According to clearly established federal law enunciated by the United States Supreme Court, to establish a *prima facie* claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. Strickland, 466 U.S. at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Both prongs (deficient performance and prejudice) must be shown before a petitioner is entitled to habeas relief. The Eleventh Circuit has held that when applying Strickland, a federal district court may dispose of ineffectiveness claims on either of the two prongs without the necessity of discussing the other. Oats v. Singletary, 141 F.3d 1018 (11th Cir. 1998).

## **EVIDENTIARY HEARING**

When the petition concerns state court proceedings, the factual basis necessary to support a claim for habeas relief in this Court must be developed in the record of state court proceedings, except under very limited circumstances.  See Breard v. Greene, 523 U.S. 371, 376 (1998).  The provisions of the AEDPA governing evidentiary hearings in federal habeas corpus cases are found at 28 U.S.C. §2254(e)(2), which states:

> (2)  If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> A.   the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> B.   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Consistent with the AEDPA goal of streamlining the habeas process, this provision "expressly limits the extent to which hearings are permissible, not merely the extent to which they are required." Kelley v. Sec., Dep't of Corr., 377 F.3d 1317, 1337 (11th Cir. 2004), *cert. denied*, ___ U.S. ___, 125 S.Ct. 2962 (Jun. 27, 2005).

Even if a petitioner convinces the district court that he diligently sought to develop the factual basis of a claim for habeas relief but was denied the opportunity to do so by the

state court, the petitioner must still persuade the district court that the facts supporting the claims for which the evidentiary hearing is requested "would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [the petitioner] guilty of the underlying offense." 28 U.S.C. §2254(e)(2)(B).

Petitioner does not meet either of the exceptions in 28 U.S.C. §2254(e)(2). Therefore, he is not entitled to an evidentiary hearing in this Court. All facts relevant to his claim must be taken, to the extent they exist, from the state court record.

## DISCUSSION

**Ground One:** Whether Petitioner was denied his Sixth and Fourteenth Amendment right to effective assistance of trial counsel by virtue of trial counsel's failure to request a jury instruction for robbery by sudden snatching, as a lesser-included offense for robbery with a deadly weapon..

Petitioner argues in support of his first ground that he "attempted to snatch money from a cash register, the victim, store clerk Ms. Jamie Mijos, grabbed the cash register in an embracing manner at which time Petitioner successfully snatched a handful of money therefrom. The trial counsel failed to request the state trial court to instruct the jury on the lesser-included offense of robbery by sudden snatching which carries a lesser potential penalty and where the evidence supported the instruction. Specifically, one of the two victims, namely, Rachel Wilson, testified that when Petitioner attempted to take money from the cash register, the other victim, Mijos, grabbed the cash register at which time Petitioner snatched money from the register." (Petition, p. 6).

Petitioner has misstated the record. Nowhere does witness Rachel Wilson state that Mijos "embraced" the cash register. To the contrary, her testimony, in pertinent part, was as follows:

Q: I'm sorry?

A. There was an altercation with Jamie and whoever it was that had come into the store. Jamie had yelled at me and said something, and then Jamie pushed the cash register to the floor - -

Q. Let's slow down and take this piecemeal. You're on the phone talking to the dentist behind the counter, a little ways down from the cash register?

A. Yes.

Q. All right. The first thing that alerts your attention was that there was something going on at the cash register where you hear a voice saying - - demanding money? Is that the first thing?

A. I think he asked for change.

Q. Okay. You kind of heard that?

A. Yeah, and then he had opened up the cash register.

Q. Did you look down there at that point and study what was going on?

A. I might have. I really don't know.

Q. Okay. What do you remember happening next down at the cash register?

A. He had said, give me your money.

Q. Okay. Do you look down there at that point?

A. Yes.

> Q. What do you see happening?
>
> A. He had his arms out with a knife, and then Jamie had pushed the cash register and then he ran out the door.
>
> A. Did you see the person grab any cash?
>
> A. Yes. He had reached and grabbed some money from the register.

(Transcript, Resp., Ex. 2, p. 40-41).

Florida Statute § 812.131(1) provides:

> (1) "Robbery by sudden snatching" means the taking of money or other property from the victim's person, with intent to permanently or temporarily deprive the victim or the owner of the money or other property, when, in the course of the taking, the victim was or became aware of the taking.

This offense requires that the property be abruptly and unexpectedly snatched from the victim's actual, physical possession, not merely from some place within the victim's control. State v. Floyd, 872 So. 2d 445 (2004) (evidence did not support conviction of robbery by sudden snatching where victim's purse was not taken from the victim's person, but from car seat next to victim.)

Had Petitioner's attorney requested a jury instruction on robbery by sudden snatching, it would have been denied by the trial court because there was no evidence to support such an instruction. It is not ineffective assistance of counsel to fail to request a jury instruction that would have been denied by the trial court. And neither was Petitioner prejudiced - had the instruction been requested, the outcome of the trial would have been no different because the instruction would not have been given. Therefore, Petitioner has failed to prove both prongs required by Strickland to demonstrate ineffective assistance of counsel and ground

one fails.

**<u>Ground Two:</u>**      Whether Petitioner was denied his Sixth and Fourteenth Amendment right to effective assistance of trial counsel by virtue of trial counsel's failure to object to the state trial court's deviation from the standard jury instruction to robbery with a deadly weapon.

Petitioner argues that the trial court removed from the jury the duty to decide whether the knife was a deadly weapon. "Petitioner asserts that the instruction as given directed the jury to find the knife to be a deadly weapon and resulted in a directed verdict of guilt as to robbery with a deadly weapon as charged. (Petitioner's Reply, p. 4).

To the contrary, the jury instruction given, taken as a whole, made it clear that it was within the jury's province to decide whether there was a weapon used at all, and, if so, whether that weapon was a deadly weapon. The instruction, in pertinent part, was as follows:

> If you find that the defendant carried a deadly weapon, such as the knife in the course of committing the robbery, you should find him guilty with robbery with a deadly weapon.
>
> If you find that the defendant carried a weapon that was not a deadly weapon in the course of committing the robbery, you should find the defendant guilty of robbery with a weapon.
>
> If you find the defendant carried no weapon in the course of committing the robbery, but did commit the robbery, then you should find him guilty only of a robbery. A weapon is defined to mean a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm.
>
> A weapon is legally defined to be any object that could be used to cause death or inflict serious bodily injury.

(Transcript, Ex. 2, p. 237).

The jury instruction placed the appropriate findings of fact upon the jury. It was neither deficient performance nor prejudicial for Petitioner's trial counsel to not object to the instruction as given. Therefore, ground two fails.

**Ground Three:**   Whether Petitioner was denied his Sixth and Fourteenth Amendment right to effective assistance of trial counsel by virtue of trial counsel's failure to call witnesses at suppression hearing.

In his Reply memorandum, Petitioner acknowledged that ground three was facially insufficient and abandoned the claim. This claim is deemed withdrawn.

**Ground Four:**   Whether Petitioner was denied his Sixth and Fourteenth Amendment right to effective assistance of trial counsel by virtue of trial counsel's failure to apprise Petitioner of the potential maximum sentence by going to trial.

In support of ground four, Petitioner contends that his trial attorney failed to advise him of the potential maximum penalty to which he would be exposed if he went to trial and was found guilty. He contends that "had he known he could have received a natural life sentence if he were found guilty at trial, he would have accepted the State's plea offer of fifteen (15) years." Further, Petitioner claims "he never received a notice from the State regarding their intention to seek sanctions under the Prison Releasee Re-Offender Act. On the day of trial, defense counsel informed him that the State was making an offer of fifteen (15) years but never discussed the maximum penalty he could receive if found guilty at the trial." Petitioner assumed, admittedly based upon his own research, that the maximum penalty would be thirty (30) years. (Petition, p. 10-10a).

Petitioner raised this ground in his State post-conviction motion. The trial court held an evidentiary hearing. (Resp., Ex. 10). The prosecutor in Petitioner's case testified that because the State had a strong case, he never made Petitioner a fifteen (15) year plea offer. And, further, if the defense had made an offer to him for a fifteen (15) year plea, he would have rejected it. The notice of enhanced penalty was mailed to Petitioner at his home address and to defense counsel.

Petitioner's trial counsel testified that he met with Petitioner numerous times prior to trial. Counsel acknowledged receiving the State's notice of enhanced penalty, and, although he could not recall a specific conversation discussing the PRR sentence with Petitioner, it was his practice during his 25 years as a trial lawyer to always discuss that specific matter prior to trial. Trial counsel further testified that he had no notation in his file of any 15-year prison offer by the State.

> The trial court made the following findings of fact:
>
> The Court finds it unlikely that Defendant would not have learned of the non-discretionary, mandatory life sentence he would receive if convicted during one of the many pre-trial hearing (sic) held in the career criminal division and improbable that Defendant's experienced attorney would not follow his customary practice in this case, in informing his client regarding the non-discretionary, mandatory life sentence he faced during their many discussions. Regarding the State's alleged offer, the Court concludes that there was never any 15 year plea offer for Defendant to accept. Contrary to Defendant's testimony, the prosecutor testified from his memory and found that his office made no such offer and if defense counsel communicated the offer, it would have been rejected. This conclusion is buttressed by former defense counsel's testimony regarding the absence of any such offer in his own file. (Resp., Ex. 11, pp. 3-4).

The findings of fact of the trial court are supported by the evidence adduced at the hearing. When findings of fact are supported by the evidence, this Court is bound by those facts. Obviously, trial counsel could not have conveyed an offer that did not exist, and his performance in this regard was neither deficient nor was Petitioner prejudiced. Therefore, ground four is denied.

## CONCLUSION

Having denied all of Petitioner's remaining claims, the Petition will be denied. Therefore, it is

ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on July 17, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2006\06-cv-1136.deny 2254.wpd*